I'm taking a guess at this, Boncino v. Forterra. Please the court. Good morning, Your Honors. If I may, I would respectfully request three minutes for any rebuttal. Three? Yes. All right. Thank you. Thank you. I'm here this morning only proposing to touch on two issues in the case and obviously any other questions that the court may have of me. But the two topics I would like to discuss and in this order are, number one, the claims that were asserted against Forterra and the individual defendants, and secondly, the issue of relation back and equitable tolling. Now, as to the first issue, the liability or inclusion of Forterra and the individual defendants in this case, as the court, I believe, is aware, those parties were in the case from the very beginning. And therefore, there was no statute of limitations issues as to them, and I respectfully submit that the trial judge got it wrong when he included them as part of his decision on futility, because he based it on the statute of limitations and did not address the fact that these parties were already in the case only within, I believe, a year or so after the date of termination. So it's our position that he should not have dismissed them. Now, the theory as to Forterra is alter ego, and I'll speak about that in a moment. And the issue as to the individuals is whether or not they had liability as officers and employees under 1514A of SOX. And . . . Did you plead and prove the alter ego, or did you plead alter ego? Yes, we did, Your Honor. In the first amended complaint, we plead alter ego, and there has never been a decision either by the District of New Jersey or by the Northern District of Texas as to the sufficiency of that pleading as to alter ego or the sufficiency of the pleadings as to the individual defendants. The court strictly based its decision. Initially, it denied the motion to dismiss without reason, other than putting in the docket that it considered the papers. But then when it got to the motion to dismiss, again, it didn't address the issue of Forterra's potential liability or the individual defendants' potential liability. And, in fact, the court made it clear that he was not reaching these other issues. He was basing it purely on a futility argument. Now, the court also makes an error in its reconsideration motion. It stated that the only claim under SOX was against Forterra, and it was not against the individual defendants. And, in fact, the initial complaint as well as the amended complaint are very clear. The very first sentence in paragraph one of the pleading states, this is an action under SOX as a result of the defendants' plural retaliatory discharge. And the complaint goes through at length the involvement of Mr. Bradley and Mr. Kerfin concerning the retaliation that was taken. And, in fact, the wherefore clause at the end of the complaint also indicates that the liability for the SOX violation is as to all three, the individual defendants and Forterra. And, respectfully, we submit that the court should have used a 12B6 standard if it was going to look at whether or not the complaint sufficiently stated a cause of action against Forterra and the individual defendants. So you're not really arguing, are you, on the issue of whether the right defendant was sued, corporate defendant? Well, we are. Because Bradley and Kerfin worked for Forterra, did they not? Whereas, well, maybe Kerfin worked for the foundry. Well, he also had a position with Forterra. I think he was the president of one of their divisions, and Mr. Bradley was the CEO of Forterra. But you did not name foundry and fabrication as defendants, right? No. In the initial complaint, we only named Forterra, Your Honor. That's correct. In the first amended complaint, based upon the information we had, including my client's knowledge of where he worked, his job duties, et cetera, we named fabrication, including the fact that Sidley Austin's letter to the DOL specifically indicated that my client did work for fabrication. So we did name fabrication initially, and later on we moved before the District of New Jersey to bring in foundry as well, and the District Court never reached that motion at the time it transferred the case to the Northern District of Texas. Sir, can I take you back to your first point? Yes, Your Honor. If I heard you correctly, you were arguing that the District Court erroneously denied your motion for leave to file the second amended complaint. The District Court did so because of limitations issues and futility. And if I heard you correctly, I think you argued, well, Forterra has been in this case the whole time, so there's no limitations issue potential against Forterra. Have I understood your argument correctly? That's correct. So if that's the case, it's my understanding that your motion for leave to file your second amended complaint wanted to add holdings and foundry. Yes. How could the fact that Forterra has been in this case from the beginning, how is that relevant to the District Court's conclusion that it is futile as to holdings and foundry, which was the substance of your motion for leave, because they were outside of the limitations period? I view them as two separate issues, Your Honor. The futility argument went to bringing in foundry and holdings. But that issue didn't apply to Forterra because we stated a claim in the initial complaint that Forterra has liability here. Of course. Maybe I'm misunderstanding your argument. Of course. I understand you have an argument that there was error on that front as well. But just on the leave for second amended complaint, that issue was based on holdings and foundry. You wanted to bring them in. The District Court said it's too late, essentially. When did your claim accrue against holdings and foundry? Well, the — Because you argue the District Court erred on that front as well. Based on the days, it appears like they are outside of — even assuming we agreed with you that it were a four-year limitations period, your attempt to add them was over four years after accrual, I believe. But when do you think your claim accrued? Well, the claim was slightly over four years. However, I think the court was utilizing the wrong date. It was utilizing a March 22 date that we tried to bring in foundry at that point. In fact, we tried to bring them in in 2021 before the District of New Jersey. And the specific date, we filed the motion on December 16, 2019. And that was less than three years from the date of termination. And the reason we named FAB rather than foundry was all of the confusing documents that my client had received, including W-2s from different entities, even though they claim he only worked for foundry. And had that not occurred, and had we not reviewed the answer that was filed with OSHA, which indicated that he worked for fabrication, we would have brought in foundry back on — moved back on December 16, 2019. Now, that motion was decided on March 23, 2020, bringing in fabrication. And again, had there not been the misinformation that was submitted to OSHA, et cetera, and my client's understanding that he did work for fabrication, we would have brought in foundry and holdings at that time. And if we used a four-year statute of limitations, we're within that time period. Now, the other point as to the first issue, the liability of Fortera and the individual defendants, I think it's important to note that they have no one appearing today on their behalf. They joined in the brief that was submitted by the company, but counsel that represents Bradley and Kerfin, which was the Fox Rothschild firm, are not here to argue today. And I would submit that that's done strategically because they don't want to highlight the fact that, in fact, Fortera was — Fortera and the individual defendants were named timely and, as I said, were in the case from the beginning. Well, let me ask you, they have raised the issue whether the language of the statute covers Fortera as an employee because your client was clearly not an employee directly of Fortera, right? Yes. I think they raised the argument that — I don't believe they challenged the fact that there's individual liability of officers and directors under 1514A. The case law on point deals with whether or not a director can have liability because the statute uses director in other sections of SOX. It doesn't refer to directors under the applicable provision, but the statute clearly provides for liability of officers, employees, agents, et cetera. So I believe that they do have — I'm not saying from the standpoint of Bradley and Kerfin at this point, what I'm asking about is whether your client, Mr. Foncino, who was an employee of either Foundry or Fabrication, has a claim against the parent company, Fortera. Yes, on an alter ego basis, we do. And what evidence, if any, did you plead about alter ego? There's a lot of evidence in terms of alter ego. For example, I think our colleague pointed out or claimed that we're just throwing out the terms of the definition of what an alter ego is, but the actual pleading talks about the fact that there are different tax reporting documents where my client, for no rhyme or reason, got tax reporting documents from Fab, got tax reporting documents from Foundry. One of the years that he got a tax reporting document, the defendants acknowledged that he worked for Holdings, but he didn't get a W-2 from Holdings for that year. So that's in the amended complaint. Well, alter ego means that the — normally, that the parent and the subsidiary are basically one entity and that one is being used by the other as some — basically a pretext or a setup. But it also includes not following corporate formalities and recognizing the — And how do you — but did you plead that? Yes. The facts are that we mentioned the tax reporting documents. There are detailed facts. I don't understand anything. The fact that he's an accountant or whatever doesn't make Foundry or Fabrication an alter ego of Forterra. I mean, you'd have to have an intermingling of the corporate activities. We're saying that Forterra is the alter ego of Foundry and Fabrication. Well, that's a new twist. Okay. And the facts are that the main issue of the Sox claim was the movement between companies of inventory and moves from Foundry to Fabrication. My client based on his background believed that using the term cooking the books. That's also evidence that they're not separating and treating these entities as separate entities and that Forterra is the one that's controlling what goes on in its subsidiaries. In fact, the amended complaint also, and I believe in the original complaint, talks about the directions given by Mr. Bradley and Mr. Kerfin to various people, including my client, in terms of recognizing revenues at the end of a quarter and — — to say, clearly this must be a cause of action under Sarbanes-Oxley. But the statute says it only allows an employee of — and then the statute specifies the filing company, its officers, directors, and so on, or any subsidiary or related companies. I could quote it to you more exactly. Or their employees. And so I take it that the statute recognizes corporate distinctions as to who can sue. And I think there's a good argument that that is consistent with what the Supreme Court said in the Lawson case. Well, the Lawson case was a different situation because it was a contract. It was not an employee of a covered entity. The same with the Moody case in this district, in this circuit. Counsel, am I right that you never cite Lawson or Moody in your reply brief? I believe we did cite in our reply the Moody case. I can't find either one of them. I mean, the red brief says that these cases are controlling. And it was kind of amazing to me that there's no mention of it in the reply brief. Well, I think the law — we did cite cases, other cases. The law is very consistent that a parent company, to the extent there's alter ego exposure, has liability. And the same thing with regard to the fact we don't dispute Lawson. Lawson is good law that someone is not an employee of a covered entity. He doesn't have standing. We're claiming here that Mr. Vonseno was an employee of a covered entity, and therefore he does have standing. And the issue is whether or not there were adequate facts pled that supported alter ego liability against Forterra. And to the extent I submit that there are many facts that show that they were treating the subsidiaries sort of as one and directing how inventory should be transferred from one entity to another, which supports this alter ego theory. But for purposes of where we were at at the trial court, we hadn't had any discovery yet, other than a few pages of documents produced at one point well into the case. But that under a 12B6 analysis of as the Forterra and the individual defendants, to the extent the court felt that there weren't adequate facts pled as to them, one would have assumed that we would have at least had one bite at the apple to amend to bring in other facts that we had that would support the alter ego liability. But the court, by granting the motion to dismiss, never addressed the issue as to Forterra and the individual defendants. It simply found that the statute of limitations barred bringing in foundry and holdings. And that's the second point I would like to discuss. Well, we'll have to discuss it on rebuttal. Understood, Your Honor. Okay. Thank you very much. Ms. Zambrano? Yes, Your Honor. Good morning. May it please the court. My name is Angela Zambrano. I'm going to address the insufficiency of the appellant's allegations with respect to the two named defendants, Forterra and U.S. Fabrication, or U.S. Fab for short. My colleague, Ms. Yolanda Garcia, is going to next address whether appellant should have been permitted to add non-party as a defendant after the statute of limitations. So you're not objecting to the individual defendants, is that right? No, Your Honor, that's incorrect. Mr. Dominic Carroll is present. He represents the individual defendants. He has agreed, and we've represented to the court, that we will be presenting jointly for all appellees. Okay. We think the arguments are the same, Your Honor. Okay. So, as Ms. Garcia will explain, though, the answer to the question of whether there should have been amendment, we believe, is no. There should not have been permission to appeal when there was a strategic decision to avoid suing an employer for five years and then requesting leave to add that employer the day after the motion to compel arbitration was properly granted by the district court. We are here, as I said, with Mr. Carroll, but we're also here with our own colleague, Mr. Barrett Armbruster, as well, from Sidley Austin. All right. Turning to the arguments now against the named defendants, appellees Forterra and U.S. FAB, Mr. Adler said something unusual that I did not expect to hear, which was that he believed the ruling with respect to Forterra by the district court related to limitations. Don't think that is correct, Your Honor. At the record on appeal 2733, the district court's decision on the motion to dismiss clearly states it is for failure to state a claim under SOX. That was also repeated on the record on appeal on the reconsideration order, and that's at 3222. In both of those places, the court made clear that its decision with respect to Forterra and FAB was based on the appellant's failure to plead properly a SOX claim under the statute. SOX provides relief, as Your Honors know, for employees of public companies or their subsidiaries or contractors when the employee has been retaliated against by their employer. The key to that statute is that the person arguing that they have been retaliated against, based on the text of the statute, must be an employee of the alleged wrongdoer. And I would say that for three reasons, Your Honors. First, the language of the SOX statute repeatedly refers to, I believe it's ten times, to an employee and then also an employer. It is an employment statute. Those are indeed the first words of the statute. Counsel, you rely heavily on Lawson.  You recognize, obviously, that the relevant wrongdoer and the employer in that case were not corporate affiliates of any kind, certainly not wholly owned subsidiaries. Correct, Your Honor. That case, of course, dealt with a contractor and its own employees. And we believe the case, though, is quite persuasive because the court spent a lot of time deciding that contractors have employees and under the language of the statute, an employee would have a claim against his or her own employer, even if they were a contractor. In other words, they didn't have to be an employee of the public company. I would submit, Judge Oldham, that if the court didn't view it that way, we could have said that they could sue the public company based on their employment being affected. It's the same reading that Mr. Adler is asking for and essentially here. And we didn't have that. The court focused on the employee-employer relationship. And I want to make sure I understand how far you're willing to go with this. Yes. Imagine a publicly traded company that takes all of its employees and puts them in a wholly owned subsidiary LLC. Your Honor. The purpose of which is only to hold the employees. So they're employed by the LLC, they get W-2s by the LLC, their entire relationship is to the LLC. Can they only sue the LLC, the wholly owned LLC? Your Honor, there are other theories of liability that would pick up the parent company. There is alter ego, which we'll talk about. There's also a joint employer theory. There's also a theory of direct control. All of those theories could potentially establish that relationship. The issue is it has to be pled. And here we do not have those pleadings. Also, in cases where they've had situations like that, Your Honor, those cases there's been a pleading against the public company in addition to the employee's employer. We don't have that here. We have pleadings that are not against either the entity that was his actual employer, Foundry, or the entity that he asserted was his employer, which was U.S. Pipe. Neither of those entities did he sue. And so we're not saying that there couldn't be a case like that. We're saying that that case has not been pled, Your Honor. Where does U.S. Pipe fit into this? Yes, Your Honor. I would like to go through that relationship briefly. There are a couple of diagrams in the record. I'll just give you the sites now if you go back later. One is 2718. It's a simplified version of the org structure. And then there's another one that's more complicated at Record on Appeal 848. I'm going to use the simple one, though. Forterra is the parent company. U.S. Pipe is the holding company. There's actually another holding company in between. It's not mentioned. Well, it's a wholly owned. Wholly owned, yes, Your Honor. And then U.S. Pipe is a holding company that owns two sister companies. Fab and Foundry. Yes, Your Honor. Those are the great-grandchildren of Forterra. Okay. Well, I notice I remember the brief referring to great-grandchildren, but I didn't see the great-grandparents and all that. Yes. The way that 2718, it looks like grandparent. So why are you saying that U.S. Pipe should or could have been sued? Yes, Your Honor. And, in fact, in the initial OSHA complaint that the appellant made, it did make that complaint with respect to U.S. Pipe and Forterra. Are you saying that U.S. Pipe might have been an arguable employer? We would not agree that they are actually the employer, but they were not. They were pled to be the employer.  Yes. All right. Sorry. And then they weren't sued. Okay. Yes. Okay. So working through that family structure, though, really briefly, Forterra is the public company. It was sued. It was not an employer. U.S. Pipe is the holding company. It was alleged to be the employer. It was not sued. The two grandchildren, great-grandchildren, one was Fab. It was not alleged to be the employer but sued, and it's not actually the employer. Foundry, excuse me, was not sued. And I'd like to go through the timeline on that because it's significant. Well, before we get to the timeline, the first amended complaint did sue Fabrication. And there's an allegation, there's a direct allegation in the first amended complaint that Voncino's, his employment was terminated by U.S. Fabrication, that your clients terminated, quote, terminated his employment with U.S.P. Fabrication. How is that not an allegation that he was employed by them and was terminated by them? Yes, Your Honor. So the issue is what does Mr. Voncino say about employment in this complaint? And if you look at the complaint, paragraph 6, he directly says he was an employee of U.S. Pipe. He then talks about working for U.S. Fab and having positions for U.S. Fab. Our position is that you cannot have a plausible allegation that you are an employee of U.S. Fab when you don't say so. In fact, you say something different. Well, let me follow up on that. I mean, the initial complaint only referred to U.S. Pipe. The first amended complaint refers to U.S. Pipe as holdings and its subsidiaries, including Fabrication and Foundry. And then it goes on to discuss lots of work for, I take your point, for Fabrication. What, in your view, would be sufficient to have alleged employment by Fabrication? He alleges that he was the general manager, that he became VP of operations, his direct supervisor was within Fabrication, et cetera, et cetera, et cetera. What's missing? What could have been or should have been alleged in your view? Your Honor, the word employee. He specifically alleges in paragraph 6 that he became a direct employee of U.S. P. He doesn't say the family of companies. He doesn't say U.S. Fabrication. He says U.S. P. So we take that allegation to be true. He continues later and refers to his employment in paragraphs 8 and 11 as continuing to work for U.S. P. Counsel, I have two questions that both dovetail with what Judge Hendricks is asking you. Number one, as Judge Hendricks read from the first amended complaint, the first amended complaint defines U.S. P. as U.S. Pipe and its various subsidiaries. So that's question number one. So why isn't that enough? And then question number two is we've never adopted this magic words test that you have to use the word employee. We use the common law of agency. He says over and over and over again, all this work for Foundry, Fab, et cetera, et cetera. Why is that not sufficient? We've never said magic words is the short answer. I'm looking at paragraph 5 of the complaint, and I see U.S. P. defined as United States Pipe. I don't see it defined as broader than that. I could have missed that, but I see U.S. P. Fabrication defined in paragraph 1, but not U.S. P. U.S. P. is defined specifically in paragraph 5 as that entity, the holding company. And then in the very next paragraph, he says he became a direct employee of that entity. He's represented by counsel the whole time, is he not? Yes, Your Honor, he is. Distinguishing between a holding company and subsidiaries and where you get your W-2 and so on is hardly rocket science. Your Honor, I agree with that. I thought you might. I would also submit that if you look at the section of the complaint dealing with the Florida whistleblower statute, it's quite telling. He specifically describes himself as being covered by that statute and that he would be an employee for purposes of that statute. Your Honor, that's artful pleading, to get within a statute. And that is the opposite of a plausible pleading that he was an employee of one of the two defendants that he sued. Your Honor, if I might. Go ahead. Go ahead. Your Honor, if I might, I do want to make clear the amendments because it was, it was, it was. Well, I'll give you one minute for that. Yes, Your Honor. He, he did not. Actually, if I have one minute, may I actually cover the alter ego allegation? It is not true that alter ego was not considered by the district court. On page 14 of the district court's decision, that's record on appeal 2730, the court specifically reviewed and rejected those alter ego allegations. As, as Your Honor covered with Mr. Adler, there are not allegations here that would satisfy the Fifth Circuit's precedent with respect to alter ego. There's not allegations relating to corporate commingling. In fact, all of the evidence that Mr. Boncino himself submitted to the court had clearly identified which company was doing what. It was not a situation of commingling. And, and the district court analyzed that quite thoroughly. Thank you, Your Honors. All right. Thank you. Okay, Mr. Adler, rebuttal. I'm sorry. My colleague, Ms. Garcia, was going to cover the amendment issue. Oh, of course. I'm sorry. I wondered about that. May it please the court, Yolanda Garcia on behalf of the defendants, including the individual defendants for the limited purposes of saying that they rest on their briefing and agree with the position taken by the district court on their dismissal and on the motion for reconsideration. I want to start by addressing the statute of limitations issues as well as the issue regarding relation back. The court asked Mr. Adler quite directly whether or not he sued the two prospective defendants in the second amended complaint within the four-year statute of limitations, which he claims applies. We disagree and believe it's a two-year statute of limitations based on both the plain text of SOX as well as the only case in the Pitt Circuit. It's within the Northern District Judge Fish that found a two-year statute of limitation applies. But regardless, under the four-year statute of limitations, he did not seek to add either foundry or USP in any court until after that four-year statute of limitations passed. It expired on January 20th, 21. He moved to add foundry and holdings in the New Jersey court after it had already transferred the case, but I'm just for purposes of being clear with the record, on April 22nd, 21. And you can see that in the record at 1762-63. That is after the four-year statute of limitations had already expired. He simply did not attempt to add either foundry or USP before the four-year statute of limitations expired. And in fact, he did not attempt to add fabrication before the two-year statute of limitations expired because he did that first in December of 2019, which was already past the two-year statute of limitations, which had expired on 1-2019. And I believe that Mr. Adler in his briefing and in his argument today has essentially conceded that point, that he did not attempt to add the two prospective defendants until after the expiration of the four-year. And what he says instead is that he believes that leave should be granted by this court to allow him to do so despite that failure under a theory of relation back. We do not believe that he meets the standard for that relation back theory by a review of the record. The first point in the record is the date of termination itself. It was January 20th, 2017. That is when the claim accrued. That is at ROA-774. A little over a year later, on February 21st, 2018, Mr. Vuoncino filed his original complaint in New Jersey at the record at 32. And at that point, he sued only one entity defendant. He sued the parent company, Forterra. He did not sue USP, who he averred and pleaded in that original complaint was his employer. He knew, and as the district court said in his opinion, he still knows today that that parent, that ultimate publicly traded company was never his employer. Why didn't he sue them? Because he made a strategic decision, a tactical decision, that he was going to leapfrog from his employer, who he pled was USP, up to the deep pocket parent, Forterra. How do we know that it was a tactical decision? Because he told us it was. After Forterra moved to dismiss on June 1st, 2018, that's at ROA-143, and after his time to amend as a matter of right expired on June 22nd, 2018, he filed an opposition to the motion to dismiss at the record 301. And in it, he stated, I may be employed by either FAB or Foundry or USP, but I can sue Forterra directly under my theory of liability. That same theory of liability that he briefed to this court. He didn't talk about it today, but he briefed it to this court. His theory is, I don't have to sue my employer directly. SOX is broad enough to allow me to reach to them. We disagree, as Ms. Ambrano stated, that under Lawson, that is the law in the Fifth Circuit. And, in fact, he's asking you to adopt a position that has never been adopted, that we have found by any court interpreting SOX anywhere. And it directly contravenes the reasoning of Lawson. You're right. He didn't argue that today. I think you're also correct that he did argue it in his briefing to the court. He does argue, and correct me if I'm wrong, but I think the record shows that, at the very least, a Forterra executive and a Forterra HR representative were the ones who terminated his employment. And he argues, for those reasons among others, that Forterra also retaliated against him. Can an employee who assumes as an employee of, let's say, fabrication or some subsidiary, can an employee simultaneously sue under SOX both the direct employer and the parent if there is evidence that the parent retaliated? I think Ms. Ambrano addressed that by talking about the other methods that the statute allows. The doors are potentially open to allow an employee to attempt to go beyond its employer. What that misses, though, I think, in terms of where Mr. Adler's argument is, is the fact that Congress actually specifically acted to allow these subsidiaries to be sued directly. Before the Dodd-Frank amendments in 2010, there was a lot of case law that had been developed to talk about whether or not subsidiaries could be sued when they were the ones who were the employers of the actual whistleblower and the publicly traded company was the apparent alleged bad actor. Well, what Dodd-Frank said when they amended the statute was, you can sue the subsidiary directly. There was a door for him to go through here. He didn't have to try to leapfrog to Forterra. He could have sued his direct employer who he pled was his employer, USP. What you're really trying to say is he could only sue his employer unless he could show that Forterra was a joint employer or an alter ego. Exactly. Some other theory of liability that has it. And that's according to the statute. That's not according to some theory out there about they're all bad guys. That's correct. And that's really directly going to the text of the statute itself, which was amended, as I said, to open the door for direct liability to those subsidiaries. But he chose not to sue who he named as his employer in the original complaint, and he chose not to sue them over and over again for the next four years until the statute of limitations expired. So when he comes to you today and says, I believe you should allow me to amend my complaint late and allow it to relate back because I made a mistake, he claims that there was a mistake that simply is not supported by the record that demonstrates he believed his employer was USP, but he chose not to sue them from the get go and leapfrog and try to capture just the publicly traded company. When he was told not once, not twice, but three times in affidavits that the defendants believed his employer was Foundry, and they told him this well within both the two and four year statute of limitations. They told him this, in fact, in the same year he filed his original complaint. He chose not to sue them either. Why did he make those decisions? The answer is what Ms. Zambrano pointed out, the second tactical reason. He did not want his state law claims to be compelled to arbitration. When they were ultimately compelled to arbitration, the day after is when he moved in Texas to seek to add in Foundry and Fab. Because Mr. Adler will tell you, well, the year earlier I had asked the New Jersey court to let me add them in, and that's true. He did it too late because the case had been transferred, but the filing exists. But he waited another year, almost to the day before he filed in Texas, the transferee court that received it. Why? He waited because he was concerned that adding in those entities would hurt his argument against arbitration. It was tactical. It was strategic. The first time choosing to sue only for Tara was going after the deep pockets because of his theory of liability that he did not have to go after the subsidiaries. What's the second reason? He was attempting to avoid arbitration. That's why we believe, and for all the reasons in our briefing, including all the other reasons in our motion to dismiss, that we believe the court's order, the court's decision should be affirmed and the dismissal as to all parties remain. Thank you, unless you have any questions. No.  Thank you. Mr. Adler? I just want to touch on a few comments that were made by counsel. And the court's question. We believe that we did state a viable claim against for Tara under alter ego. Ms. Zambrano acknowledged that there is liability if alter ego is proven. And the district court did not give us one opportunity to amend the complaint should it have felt that there were insufficient facts to set forth alter ego liability. So that goes back to my point earlier. Yes, Your Honor. Is your argument now that you can only sue for Tara because of alter ego liability? I disagree with that. That's a question. That's the only thing you've argued today. Is your position that that's the only thing that was pled here and that's the only way you can actually sue for Tara? No. What was pled in the original complaint and the first amendment. The active complaint. Both said that the defendants, including for Tara, retaliated. That was the sentence, I think, in paragraph one that I read to the court a little while ago. The allegation was that there was retaliation by the parent and the retaliation was done by its CEO, Mr. Bradley. And Mr. Kerfin, who also was a president of one of its divisions. So it was not limited to alter ego. The other comment that was made goes to the relation back doctrine and our position that the district court judge did weigh the evidence when making its decision in terms of who the employer was. The court based its initial decision to dismiss on the fact that there was no liability, there was no employer in the case. Fab was in the case. And the position that the company has taken is that my client worked for Fab. They claim he wasn't employed by but he worked for Fab. He worked out of their Florida office. And those facts would lead to a joint employer situation. And that's why when we filed our proposed second amended complaint, we did not drop Fab from the case. We pled that he worked either for Fab or Foundry. And the court really looked at it as a black or white issue and did not leave open the possibility that Fabrication did control the workplace. And Fabrication, therefore, could be found to be a joint employer and should not have granted the motion to dismiss. And again, no discovery was had at that point. So as to the relation back doctrine, the fact is, as I said earlier, the motion to bring in Fab was as a result of the evidence that we had in front of us. And that was made well within the four year statute of limitations. Even the motion to file the amended pleading, the court didn't take into consideration the fact that the case was stayed for a period of time in the District of New Jersey when the court ordered us to mediation. And if you factor in . . . Let me ask you one question because, again, you're on your red light. Yes. Are they accurate or not accurate in your view in saying that you argue that you could sue for tariff rather than your employer, number one, and in, number two, using this tactic to avoid arbitration? Our position is you can sue for tariff without the employer based on the allegations of retaliation at the parent level as well as separately as an alter ego. And as to their arguments about avoiding arbitration, that was not the reason. The arbitration motion was made in New Jersey in the very beginning of the case in 2018 before we had any of the subsidiaries, Fab, Foundry, et cetera, in the case. So it was not a failure to bring them in out of any concern that my client would be subject to arbitration. Okay. Any other questions? All right. Thank you, sir. We have your case. Thank you very much.